# United States District Court
# Central District of California

| | |
|---|---|
| GEMCAP LENDING I, LLC, a Delaware Limited Liability Company,<br><br>              Plaintiff,<br><br>    v.<br><br>GROW MICHIGAN, LLC, et al.<br><br>             Defendants. | Case № 2:17-cv-07092-ODW (AS)<br><br>**ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [9]** |

## I.  INTRODUCTION

Plaintiff Gemcap Lending I, LLC loaned money to Heavy Duty Radiator, LLC, in exchange for a security interest in certain property. (Compl. ¶¶ 7–11, ECF No. 1-1.) Gemcap contends that Defendants intentionally interfered with its contractual relationship with Heavy Duty Radiator, LLC. (*See generally* Compl.) Defendants are Grow Michigan, LLC, and Michigan Acquisition Company, LLC, both of which are Michigan limited liability companies, and they also lend money to small businesses. (Decl. of Patrick O'Keefe ("O'Keefe Decl.") ¶¶ 3–7, ECF No. 9.)

Pending before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, or Alternatively to Transfer Venue. (Mot., ECF No. 9.)[1] For the reasons below, the Court **GRANTS** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.

## II. FACTUAL BACKGROUND

Gemcap is a Delaware limited liability company with its principal place of business in Malibu, California. (Compl. ¶ 1.) It is an asset-based lender that loans money to mid- and small-sized companies that are typically distressed, and unable to obtain financing from more traditional financial institutions. (*Id.* ¶ 7.) In exchange for the loan, Gemcap takes a security interest in the business's tangible assets— usually tools, inventory, or accounts receivable. (*Id.*) If the borrower defaults, Gemcap enforces its security interest, or files a lawsuit. (*Id.* ¶ 8.)

Gemcap does not dispute that Defendants are both Michigan companies with their principal places of business also in Michigan.[2] (*See* O'Keefe Decl. ¶¶ 3–7; Compl. ¶¶ 2–3.) Defendants operate similar businesses in that they lend to small- to mid-sized companies, but are "funded by a collaboration of seventeen investor banks doing business in Michigan, as well as the Michigan Strategic Fund as administered by its agent the Michigan Economic Development Corporation." (O'Keefe Decl. ¶ 5.) Because the specifics of Defendants' lending practices are complex and involve many businesses that are not parties, the Court only addresses the facts pertinent to its personal jurisdiction analysis.

---

[1] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

[2] The Declaration of Patrick O'Keefe, Grow Michigan's CEO, provides testimony regarding Grow Michigan's state of incorporation and place of business, but O'Keefe does not directly provide jurisdiction facts regarding Michigan Acquisition Company. (*See generally* O'Keefe Decl.) In any event, Gemcap does not dispute that Michigan Acquisition Company is a Michigan company with its principal place of business in Michigan. Gemcap also asserts all of its claims against both Defendants, collectively.

Defendants lent money to certain borrowers (the "Borrowers"), none of whom are parties to this lawsuit.[3] (O'Keefe Decl. ¶ 8.) The Borrowers did business as "Detroit Radiator Corporation" and were managed by John Randall Pruitt and David Bitel. (*Id.* ¶¶ 9–12.) None of the Borrowers were incorporated in, or did business in, California. (*Id.*) Defendants lent $1.25 million to the Borrowers, and took a second-priority security interest in the Borrowers' assets. (*Id.* ¶¶ 15–16.) Before Defendants' loan, Fifth Third Bank already had loaned the Borrowers money, and had taken the first-priority security interest in their assets. (Compl. ¶ 9.) The Borrowers then defaulted on their loans from Defendants and Fifth Third Bank. Defendants attempted to negotiate with the Borrowers to establish a plan to pay down the debt, to no avail. (O'Keefe Decl. ¶¶ 18–19.) Most of these negotiations took place in Michigan. (*Id.* ¶ 19.)

Unbeknownst to Defendants, Pruitt, Bitel, and the Borrowers planned to create a new entity called Heavy Duty Radiator, LLC ("HDR") to purchase the Borrower's assets at an Article 9 UCC sale initiated by Fifth Third Bank. (*Id.* ¶¶ 21–24.) The Borrowers planned to then continue to operate a similar business. (*Id.*) They formed HDR on May 4, 2016, and it purchased the Borrowers' assets at the foreclosure sale in Michigan, in February 2017. (*Id.* ¶¶ 24–25.) The sale purportedly extinguished Defendants' second-priority security interest in the Borrower's assets. (Compl. ¶ 13.) Defendants then filed a lawsuit in Oakland County, Michigan on April 11, 2017, challenging the propriety of the foreclosure sale. (O'Keefe Decl. ¶ 26.)

After filing the Michigan lawsuit, Defendants learned that Gemcap financed HDR's purchase of the assets at the foreclosure sale. (O'Keefe Decl. ¶¶ 27–28; Compl. ¶ 13.) Gemcap and HDR entered a Loan and Security Agreement that granted Gemcap a "first priority security interest in and lien upon HDR's assets, including but not limited to all of the collateral purchased at the Article 9 Sale." (Compl. ¶ 15.)

---

[3] The Borrows include Randall Industries, Inc., NA Radiators, Inc., CTG Tanks, Inc., and Taalman, Inc. (O'Keefe Decl. ¶ 8.)

Gemcap contends it loaned HDR the money on HDR's representation that "there was no common ownership as between HDR and [the Borrowers], and that HDR was in fact an independent entity, both managerially and from an equity standpoint." (Compl. ¶ 12.) In conjunction with HDR's purchase of the Borrowers' assets at the foreclosure sale, Gemcap filed a UCC Financing Statement encompassing all of HDR's assets and collateral, pursuant to the Loan and Security Agreement. (Compl. ¶ 16, Ex. B.) This statement and the Loan and Security Agreement identify Gemcap's business address in Malibu, California. (Compl. ¶¶ 15–16, Exs. A & B.)

On August 28, 2017, counsel for Defendants sent a letter to Gemcap explaining their position with regard to their security interest in the assets that were sold at the foreclosure sale. (*Id.* ¶¶ 19–20, Ex. C.) The letter is addressed to Gemcap, attention James Thieken, at a Columbus, Ohio location. (*Id.*) O'Keefe testifies that "Thieken was Gemcap's primary point of contact in relation to the events surrounding its loan to HRD." (O'Keefe Decl. ¶ 31.) Gemcap does not address this contention.

On September 1, 2017, Gemcap filed this lawsuit in California state court, alleging that Defendants intentionally interfered with Gemcap's contractual relationship with HDR by seeking to recover its security interest in the Borrowers' assets. (Compl. ¶ 26.) Defendants removed the case on September 26, 2017. (ECF No. 1.) Defendants now move to dismiss for lack of personal jurisdiction. (Mot., ECF No. 9.)

### III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2), a party may seek dismissal of an action for lack of personal jurisdiction. Once a party seeks dismissal under Rule 12(b)(2), the plaintiff has the burden of demonstrating that the exercise of personal jurisdiction is proper. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). Where the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Accordingly, the Court only

"inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). Although the plaintiff cannot "simply rest on the bare allegations of its complaint," uncontroverted allegations in the complaint must be taken as true. *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Factual disputes are resolved in the plaintiff's favor. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1554 (9th Cir. 2006).

A federal district court may exercise personal jurisdiction over a non-resident defendant if the defendant has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110–11 (9th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 326 (1945)). "Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). California law governs and its long-arm statute allows this Court to exercise jurisdiction to the extent allowed by the Due Process Clause of the Constitution. *Id.* (citing Cal. Code Civ. P. § 410.10). A district court may exercise either general or specific personal jurisdiction over nonresident defendants. *Fed. Deposit Ins. Corp. v. British–Am. Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987).

A person is subject to general jurisdiction when his or her "contacts with a state are substantial or continuous and systematic" so as to "approximate physical presence" in the state. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). Such a person is subject to the jurisdiction of the courts of that state, "even if the action is unrelated to those contacts." *Id.*

A person who is not subject to general jurisdiction may still be subject to jurisdiction in actions that arise out of that person's specific, forum-related activities.

*Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993). The Ninth Circuit has established a three-part test for determining specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). The party asserting jurisdiction bears the burden of satisfying the first two prongs of this test. *Schwarzenegger*, 374 F.3d at 802. If that party can satisfy the first two prongs of the test, the burden then shifts to the party contesting jurisdiction to "present a compelling case" that the third prong, reasonableness, has not been satisfied. *Id.*

## IV. DISCUSSION

Plaintiff does not argue that the Court has general jurisdiction over Defendants. Therefore, the Court will only consider whether specific jurisdiction exists.

### A. Whether Defendants Purposefully Directed Their Activities toward California

The first prong of the specific jurisdiction analysis "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475 (internal quotation marks and citation omitted). The "purposeful direction" test applies in tort cases, such as here. S*ee Dole Foods*, 303 F.3d at 1111. Under the purposeful direction test, the plaintiff must show the defendant (1) committed an intentional act; (2) expressly aimed at the forum state; that (3) caused harm that the defendant knows is likely to be suffered in the forum state. *Dole Foods*, 303 F.3d at 1111.

Gemcap argues that this Court may exercise jurisdiction over Defendants because the contract that Defendants tortiously interfered with was formed in California. (Compl. ¶¶ 14–15, 25, 30, 35, Ex. A, ECF No. 1-1.) In addition to these generalized allegations regarding the underlying contract to which Defendants are not parties, Gemcap argues that it "received a harassing letter from Defendants' counsel, purporting to attack the validity of Gemcap's perfected security interest, and demand[ed] relief" that would hinder Gemcap's relationship with HDR. (Opp'n 3, ECF No. 11.) Gemcap claims that these actions were directed to, and interfered with, Gemcap's California operations. (Opp'n 5–7.) Defendants were allegedly on notice that Gemcap operated in California because Gemcap filed a UCC Financing Statement in conjunction with the loan it provided to HDR, which put all parties on notice that Gemcap had offices in California. (*Id.* at 7; Compl., Ex. B.) Gemcap, however, fails to adequately address that Defendants' letter, which forms the primary basis for Gemcap's claim, is addressed to a Gemcap representative in one of its Ohio offices. (Compl., Ex. B.) Instead, it argues that the letter's destination is irrelevant because "Defendants intended to disrupt Gecmcap's contractual relationships, loan, and security interests, all created in *California* regardless of where their letters were being sent." (Opp'n 8 n.8 (emphasis in original).)

Gemcap relies on *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1111 (9th Cir. 2004), which held that the "express aiming" requirement is met "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Despite its efforts, Gemcap does not distinguish more recent and applicable controlling precedent.

The plaintiff in *Walden v. Fiore*, 134 S. Ct. 1115 (2014), sued a DEA agent in the District of Nevada, alleging the agent violated his constitutional rights by seizing his money in Georgia. *Walden*, 134 S. Ct. at 1120. The Ninth Circuit held that personal jurisdiction was proper in the District of Nevada because the DEA officer submitted a false declaration with knowledge that it would affect someone with

significant connections in Nevada. *Id.* The Supreme Court reversed, reasoning that all the DEA agent's activities occurred in an Atlanta airport, and that the Ninth Circuit improperly allowed the "*plaintiff's* contacts with the defendant and the forum to drive the jurisdictional analysis." *Id.* at 1125 (emphasis added). Rather, courts must look at the *defendant's* own conduct with the forum to determine whether personal jurisdiction is proper. *See id.* at 1126. Although the plaintiff's Nevada attorney contacted the DEA agent, that "sort of 'unilateral activity' of a third party 'cannot satisfy the requirement of contact with the forum State.'" *Id.* at 1125 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

In *Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064 (9th Cir. 2017), a British company sent a newsletter promoting products to 343 email addresses that contained a California company's copyrighted logo. *Axiom*, 874 F.3d at 1066–67. At least 55 of those email addresses belonged to companies located in California, with 14 located in Los Angeles. *Id.* at 1070. The Ninth Circuit held this to be insufficient contact to support a finding of personal jurisdiction. It reasoned that after *Walden*, the personal jurisdiction analysis must "focus on the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (quoting *Walden*, 134 S. Ct. at 1122). Merely sending single newsletters to unknown recipients who happen to be in California is insufficient to establish personal jurisdiction. *Id.* at 1070; *see also Picot v. Weston*, 780 F.3d 1206, 1213 (9th Cir. 2015) ("Therefore, the fact that a contract envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract.").

The Court does not have personal jurisdiction over Defendants because the only contact they had with California was sending a letter to Gemcap's representative in *Ohio*, which Gemcap claims affects its contractual relationship with HDR in California. This attenuated theory of purposeful direction is not enough to establish personal jurisdiction. *Walden*, 134 S. Ct. at 1125. Defendants are Michigan

businesses that do not operate outside of that state. (O'Keefe Decl. ¶¶ 3–7.) Gemcap's allegation that Defendants had constructive knowledge of Gemcap's California location because of its UCC Filing is not enough to find that Defendants purposefully directed their activities here. Defendants present evidence that they: 1) did not know Gemcap had California locations at the time they sent the letter (O'Keefe Decl. ¶¶ 28, 35); 2) never "reached out to any Gemcap representative located in California" (*id.* ¶ 33); and 3) never intentionally directed any other activity relating to the foreclosure sale to California. (*Id.* ¶ 34.) Gemcap does not rebut this evidence. Accordingly, it has not made out a prima facie showing that Defendants purposefully directed any actions to California. *See Walden*, 134 S. Ct. at 1126.

**B.     Whether Plaintiff's Claims Arise or Relate to Defendants' Contact with California**

The Court cannot find that Gemcap's claims arise out of Defendants' contact with California because there is no such contact, as discussed above. Gemcap's claims grow from Defendants interfering with Gempcap and third-party HDR's Loan and Security Agreement. Defendants were not a party to that contract, and did not even know it existed until they filed their own lawsuit in Michigan. (O'Keefe Decl. ¶ 28.) Gemcap's only allegations are that it was harmed in California, and that Defendants sent a letter to a Gemcap employee in Ohio. These facts do not establish a prima facie case that Gemcap's claims arise out of Defendants' contacts with this forum.

**C.     Whether the Exercise of Personal Jurisdiction Would Be Reasonable**

The Court declines to address whether the exercise of jurisdiction would be reasonable because Gemcap has not met its initial burden to establish that the first two elements from *Schwarzenegger*. *Schwarzenegger*, 374 F.3d at 802 (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)) ("The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these

prongs, personal jurisdiction is not established in the forum state."). Accordingly, the Court **GRANTS** Defendants' Motion.

**D.     Gemcap's Request for Discovery**

District courts may allow a plaintiff to conduct jurisdictional discovery where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1286 n.1 (9th Cir. 1977) (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.4 (9th Cir. 1977)). On the other hand, "where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery...." *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (quoting *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988)). "At a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) (citing *Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308, 312 (S.D. Ind. 1997)).

Here, Gemcap presents no facts that would allow the Court to find discovery permissible. Gemcap relies on a single letter that Defendants sent to it, at its *Ohio location*. It provides no plausible theory of how Defendants purposefully directed their activities to California. That the letter directed at the Ohio location eventually made its way to California, and might have an effect on a contract Gemcap entered into in California is not sufficient. Discovery is not appropriate because Gemcap provides no evidence or argument calling into question the evidence presented by Defendants, which refutes jurisdiction. Accordingly, the Court denies Gemcap's request.

//

//

## V. CONCLUSION

The Court **GRANTS** Defendants' Motion to Dismiss for lack of personal jurisdiction. Defendants requested, in the alternative, that the Court transfer this case to the Eastern District of Michigan. (Mot. 13, ECF No. 9.) The Court declines to exercise its discretion to transfer the case in the interests of justice. *See* 28 U.S.C. § 1406(a). To the extent Gemcap wishes to pursue this matter, it may file its suit in Michigan. The Clerk shall close this case.

**IT IS SO ORDERED.**

January 31, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**